***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Dollar and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award with minor exceptions. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Dollar, with modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in their Pre-Trial Agreement which was filed on August 31, 2001 and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The Industrial Commission has jurisdiction over the subject matter of this case, the parties are properly before the Commission, and the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act at all relevant times.
2. Defendant is a duly qualified self-insured with AIG Claim Services as its servicing agent.
3. An employee-employer relationship existed between the parties at all relevant times.
4. Plaintiff's average weekly wage shall be determined from a Form 22. The Form 22 shows plaintiff's average weekly wage was $569.75, which yields a compensation rate of $379.85 per week.
5. The issues for determination are:
 a. Whether plaintiff sustained an injury by accident arising out of and in the course of her employment on August 13, 2000, and if so, to what benefits may she be entitled under the Act.
 b. If plaintiff's claim is compensable, are defendants entitled to a credit for short-term disability benefits which plaintiff received. Plaintiff received $100.00 per week in short-term disability benefits for 26 weeks.
 c. Whether plaintiff failed to provide timely notice of her claim for compensation pursuant to N.C. Gen. Stat. § 97-22.
6. This case was assigned for mediation, which was held on March 21, 2001, without agreement in the case.
7. The parties stipulated the following documentary evidence:
a. I.C. Form 19, completed on September 7, 2000,
 b. I.C. Form 18, completed on October 3, 2000 and filed on October 17, 2000,
c. I.C. Form 61, completed by the carrier on October 4, 2000,
d. I.C. Form 33, fled on December 7, 2000,
e. I.C. Form 33R, filed on February 8, 2001,
 f. Medical Records of Dr. Bellingham, Dr. Bell, Dr. Sulser, Dr. Porter, Forsyth Medical Center, and Carolina Rehab,
g. Plaintiff's Answers to Interrogatories, twelve pages,
h. Plaintiff's personnel file, 39 pages,
i. Plaintiff's recorded statement, twelve pages, and
j. I.C. Form 22.
 ***********
Based upon all of the competent evidence of record and the reasonable inferences therefrom, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 45 years old. She has worked in textile mills as a weaver or smash technician for most of her working years. Plaintiff began working for the defendant in November of 1995 as a smash technician and spare weaver. Her duties included fixing yarn breakage on the weaving machines, which may include lifting five to seven pound yarn bobbins. She also would fill in for weavers when they were on breaks. She worked three twelve-hour shifts per week and also served as one of the employer's safety representatives. Plaintiff's husband also worked for the defendant.
2. Since March of 1998, Dr. Bellingham has treated plaintiff for arthritic-type pain in her back, hands, and legs. In 1999, plaintiff had an acute left hand injury resulting from a horse jerking his head while plaintiff was riding, which was diagnosed as flexor tendonitis, which Dr. Bellingham also treated. The symptoms for the acute injury resolved.
3. In the summer of 1999, Dr. Jeffrey Kuhlman performed bilateral carpal tunnel syndrome releases on plaintiff's wrists. Plaintiff testified that this condition was related to her work, but admitted that she had never filed a claim for benefits for the bilateral carpal tunnel syndrome. Although the carpal tunnel syndrome was not filed as a workers' compensation claim, the employer had knowledge of plaintiff's condition.
4. On August 13, 2000, Arlene Smith was plaintiff's supervisor. As a weaver was on vacation, Ms. Smith asked plaintiff to leave her smash technician job and do the weaving. The weaving job required plaintiff to lift heavy yarn bobbins, weighing approximately twenty pounds. Plaintiff occasionally had to help with weaving, but the lifting was not a regular part of her primary job as a smash end technician.
5. On August 13, 2000, plaintiff was lifting a heavy yarn bobbin, when she felt a pull in her left arm. Then, a sharp pain shot through her neck, left shoulder and arm. Plaintiff reported the arm pain to her supervisor, but she stayed until the end of the shift, at Ms. Smith's request. She told Ms. Smith her arm hurt because of the heavy bobbins. Plaintiff was scheduled to be off the next two days. Ms. Smith did not prepare an accident report at that time.
6. By August 15, 2000, plaintiff's left arm and neck pain had increased, and she was unable to use the arm. She stopped by Ms. Smith's house to report this, as she was en route to Dr. Daniel Bellingham's office. Although plaintiff told Ms. Smith about her left arm pain, she did not relate the specific details as to how she had injured her arm, as she was waiting to have the doctor tell her what was wrong with the arm.
7. Dr. Bellingham's nurse practitioner examined plaintiff on August 15, 2000, at which time plaintiff was having muscle spasms, pain, left-sided weakness and nystagmus. An MRI was ordered to rule out a stroke. Although she reported having left arm pain since Saturday, plaintiff did not relate the specifics as to how she had injured her left arm at work during the course of the appointment. On August 16, 2000, an MRI of the brain revealed plaintiff to have a Chiari I malformation of the brain. On August 17, 2000, Dr. Bellingham saw plaintiff for continued left arm and shoulder pain. He injected her shoulder with Lidocaine and Kenalog. On August 25, 2000, Dr. Bellingham referred plaintiff to Dr. William Bell for an evaluation of the Chiari I malformation.
8. Plaintiff brought in notes from her doctor to her supervisor. Ms. Smith did not initially treat the left arm injury as a work-accident because the doctor had suspected plaintiff of having a stroke.
9. On August 25, 2000, plaintiff submitted to a random drug screening at work. She tested positive for benzoylecgonine, a metabolite of cocaine. After being advised of the test results, plaintiff informed the plant nurse that she had been taking Lorcet, Effexor, Ambien, Celebrex, Lidocaine HCL, Atenolol, and triamcinolone. The employer referred plaintiff for the Employee Assistance Program as a result of the positive test.
10. On August 28, 2000, plaintiff completed an injury and illness report with the employer for the August 12, 2000 injury.
11. On September 7, 2000, Dr. William Bell of Carolina Neurosurgical Associates examined plaintiff and ordered a cervical MRI and nerve conduction studies. Diagnostic testing revealed no nerve root compression in the neck, some slowing of nerve conductivity across the elbow indicative of left ulnar neuropathy, a positive Tinels sign at the elbow and numbness in the fourth and fifth digits. Dr. Bell found the Chiari I malformation did not require surgical intervention.
12. On October 31, 2000, Dr. Bell performed left ulnar nerve decompression. Physical therapy was ordered. By March 27, 2001, Dr. Bell found plaintiff to be at maximum medical improvement. He restricted her to sedentary work with a twenty pound lifting restriction and limited use of the left arm. Plaintiff sustained a 10% permanent partial impairment to the left arm as a result of her compensable injury.
13. Plaintiff has been temporarily totally disabled as a result of the injury since August 15, 2000. She filed the work absence as FMLA, listing that it was not due to an accident, as her health insurance would not pay for the treatment otherwise. However, once plaintiff learned the condition was such that surgery was recommended, she filed the injury as a workers' compensation claim.
14. Plaintiff has no training to work at a sedentary or desk-type job.
15. Plaintiff received twenty-six weeks of short-term disability through an employer-funded plan. After the plaintiff received work restrictions from Dr. Bell on or about March 27, 2001, the employer did not offer any work within the restrictions. Instead, on April 5, 2001, plaintiff resigned from her job with the defendant in order to take her retirement money out. Plaintiff has not sought other work since leaving her job with the defendant.
16. On August 13, 2000, plaintiff sustained an injury to her left arm and neck when she was filling in as a weaver, which required greater lifting than her usual job activities as a smash technician. This change constituted an interruption of plaintiff's usual job routine, for purposes of establishing an accident, within the meaning of the Act.
 ***********
Based upon the foregoing findings of fact the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an injury by accident arising out of and in the course of the employment on August 13, 2000. N.C. Gen. Stat. §97-2(6).
2. As a result of her compensable injury, plaintiff is entitled to temporary total disability compensation at the rate of $379.85 per week for the period from August 15, 2000 through March 27, 2001, when she reached MMI and was capable of returning to work but did not. N.C. Gen. Stat. § 97-29. Defendant is entitled to a credit for the 26 weeks of short-term disability benefits paid to plaintiff as a result of a plan wholly funded by defendant. N.C. Gen. Stat. § 97-42.
3. Plaintiff is entitled to permanent partial disability compensation at the rate of $379.85 per week for twenty-four (24) weeks as a result of the ten percent (10%) rating to the left arm. N.C. Gen. Stat. §97-31(13).
4. Plaintiff is entitled to have the defendant pay for medical expenses incurred as a result of the compensable injury as may be required to provide relief, effect a cure or lessen the period of disability. N.C. Gen. Stat. § 97-2(19).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to a reasonable attorney's fee herein approved, defendant shall pay temporary total disability compensation to the plaintiff at the rate of $379.85 per week for the period from August 15, 2000 until March 27, 2001. Such compensation has accrued to the date of this order and it totals $12,155.20. However, defendant is entitled to a credit for the $2,600.00 in short-term disability paid to plaintiff under a plan wholly funded by defendant. Therefore, defendant shall pay to plaintiff $7,166.40 and shall pay directly to plaintiff's attorney $2,388.80, which sums represent 75% and 25% respectively of the remainder of $12,155.20 less $2,600.00. Defendant shall also pay to plaintiff $764.42, which is interest at the rate of 8% per year on $9,555.20 from September 10, 2001 (the date of the hearing before the Deputy Commissioner) through September 9, 2002. Interest shall continue to accrue if this part of the award is not paid by September 9, 2002.
2. Defendant shall pay $9,116.40 for the 24 weeks of permanent partial disability resulting from the 10% rating, as follows. Defendant shall pay $6,837.30 to plaintiff and shall pay $2,279.10 directly to plaintiff's attorney. Defendant shall also pay to plaintiff $729.31, which is interest at the rate of 8% per year on $9,116.40 from September 10, 2001 (the date of the hearing before the Deputy Commissioner) through September 9, 2002. Interest shall continue to accrue if this part of the award is not paid by September 9, 2002.
3. Defendants shall pay, or reimburse those who paid, all medical providers for service rendered to plaintiff by reason of her compensable injuries to the extent those services tended to provide relief, to effect a cure or to help to return her to gainful employment.
4. Defendant shall pay the costs.
This 12th day of August 2002.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/_______________ DIANNE C. SELLERS COMMISSIONER
DISSENTING:
 S/_______________ RENEE C. RIGGSBEE COMMISSIONER